In re the **MARRIAGE OF Elizabeth SMITH and Joseph Smith.**

**Upon the Petition of Elizabeth Smith, Appellant,**

**And Concerning Joseph Smith, Appellee.**

**No. 90–153.**

Court of Appeals of Iowa.

April 2, 1991.

DONIELSON, Presiding Judge.

Elizabeth Smith and Joseph Smith were married in 1972. A decree of dissolution was entered for the parties in June 1987. Two children were born of this marriage: Joseph D. Smith (Joey), born in 1972; and Charlotte Smith, born in 1978. The parties were granted joint custody, with Elizabeth having physical care of the children. At that time both parties lived in Cherokee, Iowa, and Joseph had visitation every other weekend.

Shortly after the decree was entered, Elizabeth and the children moved to Las Vegas, Nevada. In October 1987, Joseph filed an application for an order to show cause as to an alleged contempt with respect to visitation rights. The hearing on the application finally came before the district court in March 1988. The court ordered that Joseph should have an extended visitation period during the summer and that he was to arrange for the children's return to Las Vegas on August 24, 1988. The court continued any hearing on contempt until such time as Joseph filed for an application for reconsideration.

In August 1987, Elizabeth had filed an application to modify the visitation provisions of the dissolution decree alleging her move to Nevada constituted a substantial change of circumstances. Joseph answered the application by agreeing that there had been a substantial change of circumstances and by affirmatively requesting modification of the physical care as well as visitation provisions. The matter came on for hearing in August 1988. The district court, in August 1988, found the geographic separation of the parties warranted a change in the visitation schedule and ordered a revised visitation schedule.

The district court refused, however, to modify the physical care provisions of the dissolution decree. It noted the difficulties the parties were continuing to have in communicating with each other concerning visitation. However, it also found that Elizabeth was making some efforts to advise Joseph of the children's progress and that during the previous year the parties had

Richard L. McCoy, Sioux City, for appellant.

George W. Wittgraf of Sayre & Wittgraf, Cherokee, for appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and HABHAB, JJ.

probably communicated better than at any time since the breakup of the marriage. The district court also mentioned the "remarkable record" the children had achieved while residing in Nevada.

Joseph filed a motion to amend and enlarge and also applied for an order staying proceedings affecting custody. The district court denied both on September 14, 1988, stating that the application to stay was "apparently an effort by the respondent to excuse failure to comply with the terms of the August 22nd decree." Joseph had failed to return the children on the date specified. He and the children flew to Houston, Texas, the weekend the children were to return to Nevada. Because the children had not been returned to her as ordered, Elizabeth swore out a complaint in Nevada. This resulted in the issuance of an arrest warrant for Joseph in Nevada on a charge of "violation of custody rights." Elizabeth returned to Cherokee, Iowa, and retrieved Charlotte in August 1988. She was not able to retrieve Joey until October 1988.

Since October 1988 the children have had only limited contact with Joseph. In December 1988, Joseph filed a second petition for modification seeking physical care of the children. He alleged that Elizabeth was interfering with his visitation rights. As evidence of the alleged interference he pointed to the outstanding warrant for his arrest in Nevada, Elizabeth's retrieval of the children from Iowa, and Nevada's attempt to extradite him in connection with the violation of custody rights charge.

This second application for modification came before the district court in August 1989. The parties agreed that Joey, then sixteen and a half years of age, would remain in Joseph's physical care because that was Joey's preference. The district court accordingly modified the decree as to Joey. The district court then concluded Elizabeth had refused to allow the children maximum continuing contact with Joseph, which constituted a substantial change in circumstances warranting modification of physical care. The district court granted Joseph physical care of Charlotte. Eliza-

beth was ordered to pay $150 per child per month in child support. She now appeals.

Elizabeth contends the district court erred in modifying the decree to grant physical care of Charlotte to Joseph. She argues there had been no substantial change in circumstances since the previous modification action. She also contends the child support award is excessive. Lastly, Elizabeth argues Joseph should pay her attorney fees and the fees of the guardian ad litem for the children. (It is not clear if she is referring to fees incurred before the district court or on appeal but, because we are unable to find that Elizabeth sought these fees in the trial court, we will treat it as a motion for fees on appeal only.)

■■■ Our review in cases such as this is de novo. Iowa R.App.P. 4. The welfare of the child is the controlling factor to be taken into consideration. *See Dworak v. Dworak*, 195 N.W.2d 740, 742 (Iowa 1972). Modification of a dissolution decree is allowed only when there has been a material and substantial change in circumstances since the date of the original decree or since the date of a prior modification concerning the same issue being then raised. [*Id.*] When the relief sought affects custody, support, or visitation, the change in circumstances must relate to the welfare of the child. *In re Marriage of Brown*, 247 N.W.2d 2, 4 (Iowa 1976).

■■ Here, the district court found that Elizabeth had "effectively prohibited [Joseph] from visiting his children in Nevada" by filing a complaint which resulted in an outstanding warrant for his arrest. It also found Elizabeth had refused to allow Joseph to visit the children over the 1988 Christmas holiday, had interfered with Joseph's ability to call the children, and had prevented the children from receiving mail from Joseph. The district court concluded a substantial change of circumstances had occurred because Elizabeth denied Joseph maximum continuing contact with the children without cause. We must disagree.

Our de novo review of this record convinces us that any restriction of Joseph's visitation in Nevada was not caused by

Elizabeth but by Joseph himself. Joseph failed to comply with the court's order to return the children to Nevada on August 24, 1988. The district court previously found that Joseph attempted to excuse that failure to comply by filing an application to stay proceedings affecting custody. Elizabeth had every right to seek legal recourse when Joseph failed to comply with the court's order. When Elizabeth filed a complaint in Nevada, she was exercising that right and she cannot be punished for doing so. It was Joseph's conduct, not Elizabeth's, that resulted in the issuance of a warrant for Joseph's arrest. The district court incorrectly attributed this consequence to Elizabeth.

We also note that the record does not indicate Elizabeth refused to allow Joseph to visit the children during the 1988 Christmas holiday. Rather, at that time, a Nevada court order prohibited Joseph from removing the children from the state and Joseph refused to go to Nevada due to the outstanding warrant for his arrest. Again, Joseph is responsible for the consequences of his conduct and cannot lay the blame at Elizabeth's feet.

As to the remainder of the district court's findings, this court has been unable to discern from the record when these alleged interferences were to have taken place. Much of the evidence submitted at the August 1989 hearing related to matters that had been previously considered by the district court in the August 1988 modification order. No appeal was taken from that order and, therefore, those matters were conclusively established. Joseph cannot collaterally attack that ruling.

Even assuming that in late 1988 and 1989 the children were somewhat restricted in communicating with their father, this would not constitute a substantial change in circumstances since the previous modification order. In August 1988, the district court noted the parties' *continuing* problem with communication. We, like that court, encourage the parties to behave in a mature manner, promoting the children's relationship with both parents.

The record before us does not warrant a modification of physical care. Eliza-

beth's role as primary physical caregiver should not have been disturbed. Charlotte is to remain in Elizabeth's physical care. We do not address the parties' decision to allow Joey to reside with his father, however, the effect is that the children will be separated from each other. Ordinarily siblings should not be separated except for good and compelling cause. *See In re Marriage of Mikelson*, 299 N.W.2d 670, 674 (Iowa 1980). Here, however, the two siblings are many years of age apart, Joey prefers to live with his father, Charlotte has primarily been in and appears to thrive in the physical care of her mother, and the guardian ad litem for the children suggested that the district court consider split physical care as a possibility. Further, we are confident the sibling relationship can be maintained with an appropriate visitation schedule. Under these circumstances we find good and compelling cause.

Because we award physical care of Charlotte to Elizabeth, we also remand for the district court to consider visitation and child support. The trial court shall enter further orders in conformance with this opinion.

Costs of this appeal are taxed to Joseph. The parties shall pay their own attorney fees.

**REVERSED IN PART AND REMANDED.**