STATE of Iowa, ex rel., Kimberly C. TACK, formerly Kimberly C. Mangler, Plaintiff–Appellee/Cross–Appellant,

v.

Steven G. SANDHOLDT, Defendant–Appellant/Cross–Appellee.

No. 93–732.

Court of Appeals of Iowa.

May 26, 1994.

William M. Vilmont of Holleran, Shaw, Murphy & Stoutner, Clinton, for appellant.

James D. Bruhn of Farwell & Bruhn, Clinton, for appellee.

Heard by SCHLEGEL, P.J., and HABHAB and CADY, JJ., but decided by DONIELSON, C.J., and HAYDEN, SACKETT, HABHAB, CADY, and HUITINK, JJ.*

* Senior judge from the Iowa Court of Appeals serving by order of the Iowa Supreme Court.

CADY, Judge.

Steve Sandholdt and Kimberly Tack, formerly known as Kimberly Mangler, had a minor child, Yvonne, born October 22, 1974. Kimberly filed an action to establish paternity and obtain child support. The district court established paternity and ordered Steve to pay child support until Yvonne was eighteen years of age or until the requirements of Iowa Code section 598.1(2) had been met regarding support for full-time students. In April 1978, Steve filed an application for modification seeking visitation rights, which the district court denied.

In 1991, a petition for child support was filed under Iowa Code chapter 252A by the State on behalf of Kimberly. Steve was ordered to pay child support for Yvonne in the sum of $480 per month. The judgment provided the support would continue until Yvonne reached the age of eighteen or was no longer a full-time student. On October 28, 1992, Steve filed an application for modification, requesting termination of his child support obligations. Following a hearing, the district court ruled the Iowa Department of Human Services could only collect child support payments due and payable as of October 22, 1992.

On December 17, 1992, Kimberly filed an application with the district court, alleging Yvonne was a full-time student and eligible to receive child support. Steve answered, arguing he had been denied visitation and should be excused from paying child support. Steve further pointed out Yvonne accepted a settlement as a result of a personal injury accident, and upon her eighteenth birthday, received $143,384.

Following a hearing on Kimberly's application, the district court ordered that Steve's child support obligation of $480 per month would remain in effect through the month Yvonne graduates from high school. Thereafter, Steve was ordered to pay $220 per month until Yvonne completed college or as provided for in section 598.1(2). Steve appeals, and Kimberly cross-appeals.

Steve claims Yvonne is self-sustaining and neither parent should be required to pay child support. He argues his support payments should be low in any event, since he was denied visitation with Yvonne since birth.

On her cross-appeal, Kimberly argues Steve should be required to pay $395 per month child support. Kimberly notes Steve earned $51,949 in 1992 and is financially capable of paying more for Yvonne's education.

▆▆▆ In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

## I. Order for Payment of College Expenses

▆▆▆ Iowa Code section 598.1(2) (1991), allows the court, in its discretion, to award child support to provide for adult students while they attend college. This section, in pertinent part, provides:

> [T]he obligations may include support for a child who is between the ages of eighteen and twenty-two years ... [and is], in good faith, a full-time student in a college, university, or community college....

*Id.* The factors considered in determining whether such an award is proper include the financial condition of the parents, the ability of the child for college work, the age of the child and whether the child is self-sustaining. *In re Marriage of Vrban*, 293 N.W.2d 198, 202 (Iowa 1980); *In re Marriage of Lieberman*, 426 N.W.2d 683, 685 (Iowa App.1988).

We first examine Steven's financial status and ability to contribute to Yvonne's college expenses. Steven's average net monthly income, as determined by the district court, was $2188. Although Steven did not file a financial statement, the district court took

judicial notice of the court file which indicated Steven received additional income from investment property. We conclude Steven has the financial ability to contribute to Yvonne's college expenses.

We next consider Yvonne's age and ability to perform college work. At the time of trial, Yvonne was eighteen years of age and within the age range noted in the statute. While in high school, she maintained a 3.2 grade point average on a 4.0 scale. Her composite ACT score placed her in the top eleven percent of students nationally. At the time of trial, Yvonne was scheduled to attend the University of Nebraska to pursue a four-year degree in physical therapy.

■ Finally, we address the question of whether Yvonne is self-sustaining. Steven claims Yvonne is self-sustaining due to the conservatorship proceeds derived from her personal injury lawsuit. Kimberly argues these assets are compensation for injuries received in the van-train accident and should not be considered at all. Generally, a child's financial resources may be considered when determining a parent's obligation to pay college expenses. *In re Marriage of Misol,* 445 N.W.2d 411, 414–15 (Iowa App.1989) (determined children's accounts were gifts intended by their father for use for higher education and therefore must be considered when evaluating parent's obligation to pay college expenses); *In re Marriage of Boehlje,* 443 N.W.2d 81, 84 (Iowa App.1989) (gifts given under the Uniform Gift to Minors Act specifically for college expenses must be considered when evaluating parent's support obligations); *In re Marriage of Lieberman,* 426 N.W.2d 683, 684–85 (Iowa App.1988) (trust established for express purpose of paying college expenses must be considered when evaluating parent's obligation to contribute to college expenses).

■ These cases do not specifically address parental support obligations for college expenses in situations involving children's trust accounts or other types of resources expressly established for a purpose other than college expenses. We, however, read *In re Marriage of Vrban* to require us to consider all of a child's resources regardless of their established purpose or source. The dictates of *Vrban* expressly require us to consider whether a child is self-sustaining. *Vrban,* 293 N.W.2d at 202. In order to determine whether a child is self-sustaining, we must evaluate all of the child's financial resources. We find support for this conclusion in other jurisdictions. *See Bayliss v. Bayliss,* 575 So.2d 1117, 1120 (Ala.Civ.App.1990) (enumerating factors considered in determining whether parent will be required to contribute to child's college expenses including financial resources of child); *Miller v. Miller,* 163 Ill.App.3d 602, 114 Ill.Dec. 682, 693, 516 N.E.2d 837, 848 (1987) (discussing statute requiring child's resources to be considered with other factors when determining whether parent will be required to contribute to child's college expenses).

■ We do not find Yvonne to be solely self-sustaining. We recognize her settlement was compensation for serious personal injuries suffered in the van-train collision. Yvonne received her personal injury settlement following a collision which occurred July 20, 1986. She was a passenger in a van struck by a railroad train. She suffered a closed head injury, abdominal injuries, broken left and right legs and numerous lacerations and contusions. The growth plate in her left leg was damaged. Yvonne was hospitalized approximately seven weeks at Iowa Methodist Medical Center. She was also hospitalized three times at the Mayo Clinic in Rochester, Minnesota. She has undergone three surgeries, including an experimental surgery to try to correct damages to the growth plate in her leg. She has had numerous medical tests and x-rays. She has a one and one-half inch discrepancy in leg length which causes her to incur severe back pain. She has also incurred permanent scarring. Yvonne may incur future medical expenses resulting from the injuries she received in the collision and it is likely her present health insurance will not be continued. We, however, conclude the district court was correct in considering Yvonne's financial resources when evaluating Steven's obligation to contribute towards college expenses. Finally, Steven contends his lack of contact with Yvonne prevents the court from requiring him to contribute towards college ex-

penses. He relies on *In re Marriage of Baker,* 485 N.W.2d 860, 862 (Iowa App.1992) as authority for this proposition. We find *Baker* distinguishable from the present case. In *Baker,* the children expressly disenfranchised themselves from their father in spite of his repeated attempts to maintain a parent-child relationship. *Id.* The court determined it was inequitable to contribute to their college expenses. *Id.* This is not the case here. In 1978, Steven was denied visitation with Yvonne due to his harassing conduct towards Kimberly. Steven made no additional attempt to modify that order. In addition, Yvonne never made any attempts to disenfranchise herself from Steven. The lack of contact between Steven and Yvonne was largely due to circumstances of Steven's own making. We do not now allow these circumstances to excuse him from contributing to Yvonne's college expenses.

We affirm the district court's order requiring Steven to contribute to Yvonne's college expenses. In so doing, we deny Kimberly's cross-appeal requesting an increase in support paid. We further order Steven to pay $750 towards Kimberly's attorney fees.

**AFFIRMED.**

All Judges concur except DONIELSON, C.J., who concurs specially, and SACKETT and HAYDEN, JJ., who dissent.

DONIELSON, Chief Judge (specially concurring).

I concur with the majority opinion. I write separately to express my belief the settlement from the personal injury accident should not be considered when determining Steven's obligation to support Yvonne in college. Yvonne suffered terrible injuries when a van in which she was a passenger was struck by a train. Both the majority and dissent note the significant ongoing effects of her injuries and her probable future inability to obtain proper insurance coverage. The settlement was to make up for the substantial permanent loss Yvonne suffered as a result of the injuries she sustained in the accident. To use the settlement as a factor in determining how much her father should pay in child support could have the effect of denying Yvonne the benefit of the settle-

ment. I recognize *In re Marriage of Vrban* requires us to determine whether a child is self sustaining as one of the factors to consider when setting the appropriate support level. I disagree, however, that the settlement in this situation should be considered in determining whether Yvonne is self sustaining. I look at this situation as "special circumstances" which take this settlement outside our consideration. The settlement was to replace what she lost and to provide for anticipated future medical and insurance needs—not to replace the support her father has a duty to provide. *See Petition of Deierling,* 421 N.W.2d 168, 171 (Iowa App.1988). The obligation "is to be apportioned according to the reasonable ability of each parent to contribute." *Id.* Steven's gross earnings in 1992 were $51,949. The court calculated his net monthly income at $2,188. He clearly has the ability to contribute substantially to Yvonne's support during college without plundering her personal injury settlement proceeds.

SACKETT, Judge.

I concur in part and dissent in part.

Iowa Code section 598.1(6) imposes an obligation in some cases on parents whose marriages have been dissolved to support unmarried adult children who are students. *See In re Marriage of Vrban,* 293 N.W.2d 198, 202 (Iowa 1980). Support is not required in all cases. *Id.* at 203. There is no corresponding duty of support on parents who have remained married to each other. *Id.* at 202; *In re Marriage of Voyek,* 491 N.W.2d 189, 191 (Iowa App.1992); *In re Marriage of Linberg,* 462 N.W.2d 698, 701 (Iowa App.1990).

Yvonne's parents were never married to each other. The issue of whether the benefits of section 598.1(6) are available where there has not been a dissolution was not specifically raised.

Yvonne's paternity was established following a jury trial that resulted in a finding of paternity and establishing of support. A subsequent application of Steven for visitation was denied, and Steven was restrained by court order from contacting Yvonne. No attempt was made by Yvonne to contact Steven. Steven has assumed financial responsibility imposed on him for the child without corresponding benefits.

Yvonne has in her own name sufficient resources to fund her college education. The funds came from an accident settlement and she suffers some residuals from an accident. There is a possibility Yvonne may not be insurable or, if she is able to get insurance, the insuring company may exclude existing conditions. Yvonne's growth plate in her leg was broken in the accident and one of her legs is shorter than the other leg. This causes backaches if she stands for long periods of time and she may need surgery to correct the problem. Yvonne received blood and, although the AIDS testing was in effect at that time, there remains a possibility she could contract the disease from the transfusion.

Where children have substantial assets in their own names, the court may order these assets to be used first for college expenses. *See In re Marriage of Steele,* 502 N.W.2d 18, 22 (Iowa App.1993); *In re Marriage of Boehlje,* 443 N.W.2d 81, 84 (Iowa App.1989); *In re Marriage of Lieberman,* 426 N.W.2d 683, 685 (Iowa App.1988).

If Yvonne's parents were married to each other and Yvonne had a $143,384 savings account, I believe her parents would expect her to use it to assist with her college. If Yvonne's parents were married to each other and Yvonne had made no effort to communicate with them, I doubt they would be contributing to her college fund. And if Yvonne's parents were married to each other, they alone would be making a decision as to what they contributed to their adult daughter's education. I am not ready to impose on an unmarried parent a greater obligation toward his or her child's college education expense than I think he or she would be making were the parents still married.

I would modify to decrease Steven's obligation from $220 a month to $100 a month and order each party pay his or her own attorney fees.

HAYDEN, J., joins this dissent.